Honorable Jan Shabro State Representative, 31st District P.O. Box 40600 Olympia, WA 98504-0600
Dear Representative Shabro:
By letter previously acknowledged, you have requested an opinion on the following questions which we have paraphrased for clarity:
 1. When a planning jurisdiction designates critical areas under the Growth Management Act (RCW 36.70A), is it required to designate, as critical, shorelines within the jurisdiction which have been designated as shorelines of statewide significance under the Shoreline Management Act (RCW 90.58)?[1]
 2. If a local jurisdiction determines that some (but not all) of its marine shorelines should be designated as critical areas under the Growth Management Act (RCW 36.70A), is that determination subject to review by the growth management hearings boards and/or the courts?
 [original page 2] BRIEF ANSWER
A shoreline of statewide significance (or any other shoreline within a planning jurisdiction's boundaries) shall not be considered a critical area for Growth Management Act (GMA) purposes except to the extent that specific areas qualify for critical area designation as set forth in the GMA (RCW36.70A.030(5)) and have been designated as such pursuant to RCW36.70A.060(2). A planning jurisdiction's designation of critical areas within shorelines is subject to administrative and judicial review, based on substantive standards derived in part from the GMA and in part from the Shoreline Management Act (SMA), depending on the circumstances.
 BACKGROUND
Your questions concern the way in which two statutory land use schemes work together — the SMA (primarily codified as RCW 90.58) and the GMA (primarily codified as RCW 36.70A). We will discuss each of these statutes separately before analyzing how they relate to each other.
Shoreline Management Act of 1971.
The SMA, RCW 90.58, was passed by the Legislature in 1971 as an alternative to proposed Initiative Measure 43. In the 1972 general election, the voters chose the legislative alternative (Laws of 1971, Ex. Sess., ch. 286) over the original proposed initiative. The goal of the SMA is "to prevent the inherent harm in an uncoordinated and piecemeal development of the state's shorelines." RCW 90.58.020. The SMA's three broad policies (1) promote preferred uses of shorelines consistent with control of pollution and prevention of damage to the natural environment, (2) protect shoreline natural resources, and (3) preserve public access to enjoy shorelines. Id. The SMA governs all "shorelines of the state" by planning for and fostering all reasonable and appropriate uses of the state shorelines. Id. Shorelines of the state are the total of all "shorelines of statewide significance" which are accorded special emphasis and are geographically designated by the Legislature in RCW 90.58.030(2)(e), and shorelines which are broadly defined as
 all of the water areas of the state, including reservoirs, and their associated shorelands, together with the lands underlying them; except (i) shorelines of statewide significance; (ii) shorelines on segments of streams upstream of a point where the mean annual flow is twenty cubic feet per second or less and the wetlands associated with such upstream segments; and (iii) shorelines on lakes less than twenty acres in size and wetlands associated with such small lakes[.]
RCW 90.58.030(2)(d).
The SMA is administered by a partnership between the Department of Ecology and local governments. In this cooperative program, cities and counties have the primary responsibility to [originalpage 3] develop a shoreline "master program" regulating development in shorelines. The shoreline master program is the central regulatory scheme of the SMA and is defined as
 the comprehensive use plan for a described area, and the use regulations together with maps, diagrams, charts, or other descriptive material and text, a statement of desired goals, and standards developed in accordance with the policies enunciated in RCW 90.58.020[.]
RCW 90.58.030(3)(b). A local government adopts its shoreline master program, which must be periodically updated, as the comprehensive use plan and zoning ordinance for the described shorelines, and the shoreline master program is based on state laws and consistent with the Department of Ecology's guidelines. RCW 90.58.080, .100; WAC 173-26. The Department of Ecology provides technical assistance and reviews and approves shoreline master programs and any substantial development permits issued by local governments within designated shorelines. The result of this process, within each local jurisdiction, is a periodically-updated shoreline master program stating planning goals and related information about each of the shorelines within the jurisdiction.
The Growth Management Act.
The GMA, RCW 36.70A, was adopted by the Legislature in 1990. The Legislature found that
 uncoordinated and unplanned growth, together with a lack of common goals . . . pose a threat to the environment, sustainable economic development, and the health, safety, and high quality of life enjoyed by residents of this state. It is in the public interest that citizens, communities, local governments, and the private sector cooperate and coordinate with one another in comprehensive land use planning.
RCW 36.70A.010. To guide the development and adoption of comprehensive land use plans and development regulations of counties and cities, the GMA sets forth 13 enumerated goals addressing (1) urban growth, (2) reduction of sprawl, (3) transportation, (4) housing, (5) economic development, (6) property rights, (7) permits, (8) natural resource industries, (9) open space and recreation, (10) environment, (11) citizen participation and coordination, (12) public facilities and services, and (13) historic preservation. RCW 36.70A.020.
Additionally, when the GMA was amended in 1995, the goals and policies of the SMA, as set forth in RCW 90.58.020, were included as a goal of the GMA "without creating an order of priority among the fourteen goals." RCW 36.70A.480(1).
Counties and cities that are required or choose to plan under RCW 36.70A.040 must adopt a "comprehensive land use plan" (comprehensive plan) and periodically update the comprehensive plan while providing public participation. The comprehensive plan is the central regulatory scheme of the GMA and is broadly defined as "a generalized coordinated land use [original page4] policy statement of the governing body of a county or city that is adopted pursuant to this chapter." RCW 36.70A.030(4). The mandatory elements of a comprehensive plan include the county's or city's:
 (1) land use element designating uses such as agriculture, timber production, housing, commerce, industry, recreation, open spaces, general aviation airports, public utilities, public facilities, and other land uses;
 (2) housing element for existing and projected needs;
 (3) capitol facilities plan addressing existing and projected needs with coordinated financing plans;
 (4) utilities element for existing and projected needs;
 (5) rural element protecting the rural character of the area and permitting rural development, forestry, agriculture.
See RCW 36.70A.070.
Additionally, each county or city shall adopt development regulations that designate "critical areas", which is defined as "the following areas and ecosystems: (a) Wetlands; (b) areas with a critical recharging effect on aquifers used for potable water; (c) fish and wildlife habitat conservation areas; (d) frequently flooded areas; and (e) geologically hazardous areas." RCW36.70A.030(5). A critical area ordinance is required to be reviewed and, if needed, revised. RCW 36.70A.130(b). Given the definitions, some areas meeting the definition of a "critical area" under the GMA may also comprise "shorelines" or portions of "shorelines" as defined in the SMA. However, as discussed below, the GMA now provides that:
 The policies, goals, and provisions of chapter 90.58
RCW and applicable guidelines shall be the sole basis for determining compliance of a shoreline master program with this chapter except as the shoreline master program is required to comply with the internal consistency provisions of RCW 36.70A.070, 36.70A.040(4), 35.63.125, and 35A.63.105.
RCW 36.70A.480(3).
1995 and 2003 Legislative Amendments to the SMA and the GMA.
In 1995, the Legislature partially integrated the SMA and the GMA, transferring jurisdiction for appeals of shoreline master programs from the shoreline hearings board to growth management hearings boards. Laws of 1995, ch. 347, § 311 (codified as RCW90.58.190). A decision by the Central Puget Sound Growth Management Hearings Board interpreted this integration of the SMA and GMA with regard to the designation of critical areas inEverett Shorelines Coalition, et. al. v. City of Everett andWash. State Dep't of Ecology, Case [original page 5] No. 02-3-0009c (2003). In its order on reconsideration, the growth board held: "In short, the Board concludes that shorelines ofstate-wide significance are critical areas subject to both theGMA and the SMA." Order Granting Tribes' Mot. To Recons. 
Clarify, Etc., at 6 (emphasis in original).
The Legislature responded to the Everett decision with the adoption of ESHB 1933. Laws of 2003, ch. 321. The Legislature explicitly repudiated the Board's conclusion that shorelines of statewide significance are categorically critical areas which must be protected both under the SMA and GMA. Laws of 2003, ch. 321, § 1; RCW 90.58.030 (Notes — Findings). As amended by the 2003 Legislature, the GMA now provides that, "Shoreline master programs shall provide a level of protection to critical areas . . . that is at least equal to the level of protection provided to critical areas by the local government's critical area ordinances". RCW 36.70A.480(4). This protection occurs as of the date the Department of Ecology approves a local government's shoreline master program incorporating the critical area segment. RCW 36.70A.480(3)(a). The 2003 Legislature also added language providing that "shorelines of the state shall not be considered critical areas under this chapter except to the extent that specific areas located within shorelines of the state qualify for critical area designation based on the definition of critical areas provided by RCW 36.70A.030(5)". RCW 36.70A.480(5).
 ANALYSIS 1. When a planning jurisdiction designates critical areasunder the Growth Management Act (RCW 36.70A), is it required todesignate, as critical, shorelines within the jurisdiction whichhave been designated as shorelines of statewide significanceunder the Shoreline Management Act (RCW 90.58)?
From the foregoing discussion, this question must be answered in the negative, because RCW 36.70A.480(5), as amended in 2003, specifically provides that, "Shorelines of the state shall not be considered critical areas under this chapter except to the extent that specific areas . . . qualify for critical area designation based on the definition of critical areas provided by RCW 36.70A.030(5)". One of the purposes of the 2003 legislation, as noted above, was to reverse the Everett decision in which a Growth Management Board had concluded that shorelines of statewide significance under the SMA should automatically be designated as critical under the GMA.
At least since the 2003 amendments to the SMA and the GMA, it is clear that no shoreline of the state, including shorelines of statewide significance, is to be treated as automatically qualifying for critical area designation under the GMA. Rather, each jurisdiction is expected to evaluate its shorelines to determine the extent to which they contain areas meeting the "critical area" definition set forth in RCW 36.70A.030(5). In effect, the Legislature has directed that the SMA process and the GMA process remain separate, except for the consistency requirements noted above (requiring the application of distinct substantive standards). Thus, a shoreline master program is adopted pursuant to the SMA rather than the GMA, while critical[original page 6] area designations under the GMA are evaluated under GMA standards, rather than the SMA. RCW 36.70A.480(3).
2. If a local jurisdiction determines that some (but not all)of its marine shorelines should be designated as critical areasunder the Growth Management Act (RCW 36.70A), is thatdetermination subject to review by the growth management hearingsboards and/or the courts?
Your second question requires a continuing analysis of the interaction between the SMA and GMA as specifically related to the designation and protection of critical areas. Critical areas are defined under the GMA by RCW 36.70A.030(5). However, the protection of critical areas within shorelines "shall be accomplished only through the local government's shoreline master program and shall not be subject to the procedural and substantive requirements of [the GMA]" as of the date the Department of Ecology approves a local government's shoreline master program. RCW 36.70A.480(3)(a).
As noted above, shoreline master programs must provide protection for designated critical areas in shorelines at least equal to the level of protection provided for critical areas where a local jurisdiction plans under the GMA. RCW36.70A.480(4). The requirements of best available science under RCW 36.70A.172 shall not apply to the adoption or subsequent amendment of a shoreline master program and shall not be used to determine compliance with the SMA. RCW 36.70A.480(3)(c).
Although the provisions discussed above set forth distinct standards for reviewing the designation of critical area designations within the shorelines of the state, such designations remain reviewable under the GMA, which assigns some jurisdiction over SMA matters to the growth management hearings boards. The boards' jurisdiction includes petitions alleging that a state agency, county, or city planning under the SMA "is not in compliance with the requirements of this chapter [RCW 36.70A, the GMA], chapter 90.58 RCW [the SMA] as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW [SEPA] as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW". RCW 36.70A.280(1)(a).[2]
If a jurisdiction designated certain areas within its shorelines as "critical areas" while failing to designate other portions of the shorelines within the jurisdiction, such action could be the subject of a petition for review asserting that the designation was not in compliance with the GMA, the SMA, or both. The petitions could assert that the jurisdiction had designated too many areas as critical, or not enough, or some combination of the two. In considering such petitions, the boards would look to RCW 36.70A.030(5) to determine, as a substantive matter, whether any particular area qualified for "critical area" designation. If the area is subject to a shoreline master program, however, the statutes provide that the SMA, and not the GMA, will [originalpage 7] govern the procedure to be followed (RCW36.70A.480(3)(a)), unless the limited exception set forth in RCW36.70A.480(6) applies.[3]
We trust this opinion will be of assistance to you.
Sincerely,
ROB McKENNA Attorney General
TIMOTHY D. FORD Deputy Solicitor General
:aj
[1] Your question refers to "marine shorelines", but the analysis is the same whether or not a shoreline is "marine". Although a local jurisdiction may classify some shorelines as "marine shorelines" as a part of its shoreline master program, the phrase "marine shorelines" is not a defined term in the Shoreline Management Act (SMA). The SMA defines "shorelines" and "shorelines of statewide significance" as discussed in this opinion, and "marine" environments may exist in each.
[2] These same matters are potentially subject to direct judicial review under RCW 36.70A.295 or appeal to the courts as provided in RCW 36.70A.300.
[3] A local government may include in its shoreline master program land necessary for buffers for critical areas that occur within shorelines of the state. RCW 90.58.030(2)(f)(ii). Land included in a shoreline master program necessary for buffers are to be protected by the shoreline master program. However, if a shoreline master program does not include land necessary for buffers for critical areas within shorelines of the state, then the local government shall protect those critical areas and their required buffers under its critical areas regulations adopted under the GMA. RCW 36.70A.480(6).